**COLONIAL COUNTRY CLUB v. RICHMOND**

———

(March 7, 1932. Opinion and Decree.)

———

Rolf I. Seeberg, of New Orleans, attorney for plaintiff, appellee.

J. C. McGee, of New Orleans, attorney for defendant, appellant.

JANVIER, J.   Plaintiff is an incorporated golf and social club.   Defendant was a member thereof.

This suit is for dues, war tax thereon and for locker rental.

Defendant contends that he resigned his membership in the club prior to January 1, 1930, which is the time from which it is now claimed by the club that membership dues and other fees are owing.

Plaintiff calls attention to section 7, paragraph 1, of the by-laws of the organization by which, in ' accepting membership, defendant agreed that in his dealings with the club he would be governed and con-

trolled, in which paragraph it is provided that, "No resignation shall be accepted * * * unless said resignation shall have been placed in the hands of the secretary prior to January 1" and contends that, since no resignation of defendant was received by the secretary of the club prior to January 1, 1930, the obligation to retain membership for another year cannot be escaped.

Defendant admits that he did not hand his resignation to the secretary and that he cannot state it was actually received by that official and that he did not mail it, but he says that he did deliver a written resignation to a Mr. Scobel, "the golf professional" employed by the club, and that the said Scobel agreed to make proper delivery of the resignation.   Scobel is no longer in the employ of the club and was not produced as a witness.

According to defendant he did not know who was the secretary and he testified that on all of his visits to the clubhouse and to the golf course Mr. and Mrs. Scoble seemed to have complete charge and that all of his dealings with the club were had through Scobel.

The countervailing proof shows that Scobel had no official connection with the club; that he had been employed only as golf professional and grounds keeper and that he had no authority whatever to attend to such matters as memberships, resignations and the relations between the members and the officials of the club.

Defendant's counsel argues that he, defendant, was under no duty to find the secretary and to present to him the resignation; that since the clubhouse appeared to be the domicile of the club he was justified, in the absence of the secretary, in

presenting his resignation to anyone apparently in charge since there was no other official present. In support of his theory he points to the decision of the Supreme Court in State ex rel. Hinyub et al. v. Parish Democratic Executive Committee for the Parish of Jefferson, 173 La. 857, 138 So. 862. In that case certain prospective candidates for political office desired to qualify as entries in a party primary. The time limit for qualification expired at midnight on a certain day and they were required to file their respective notices of intention before midnight on that last day. When they attempted to do so it was impossible to locate either of the officers with whom the notices should have been filed and the office at which the officers might have been expected to be found was closed. In this emergency the parties placed their notices, properly addressed, in the United States mail. The court held that in view of the fact that they were given until midnight and because they had done all that they could do to locate the proper officials, their action in mailing the notices was sufficient.

We cannot see that that decision is applicable to the facts here. Had defendant waited until the last day, as was his right, and had he then gone to the club in an effort to locate the secretary, and had he then, after an unsuccessful effort, given his resignation to some person at the domicile of the club and apparently in charge, then the facts might bring the matter under the doctrine announced in the Hinyub case. But, according to Richmond, he gave his resignation some nine months or so before the end of the year—a most unusual thing to do as the evidence shows—and he, instead of locating the secretary and handing it to him in person, and instead of bringing it to the office of the clubhouse, and instead of depositing it in the mails, a course which he had no doubt adopted in paying other bills and the course which he adopted the following year in protesting against being charged further dues, he handed it to an unauthorized person for delivery. He thus made that person his agent and if the agent failed in his duties he himself must suffer the consequences.

During the nine months or so which intervened between the time at which he claims he presented his resignation to Scobel and the end of that year he could, with little effort, have ascertained whether the resignation was properly on file with the secretary.

The law applicable is well settled in 11 C. J. 927 as follows:

"* * * To entitle a member to resign, so as to relieve himself from further liability as such, he must comply with such provisions as may be contained in the by-laws relating to resignation. Accordingly * * * if the resignation is not received by the officer of the club designated by the by-laws to receive it, its receipt by a clerk in the club's office does not render it effective."

That the by-laws and constitution form the law between the club and its members is well settled.

"* * * If a club adopts a constitution and by-laws they constitute a contract between the club and its members, binding on both * * * and every member of the club is presumed to be acquainted with its rules * * *" 11 Corpus Juris, 924.

"* * * It is also a rule of general application that one who has become a member of an incorporated social club will be deemed to have known and assented to the provisions of its charter and by-laws. * * *" 25 R. C. L. 50.

See, also, Anderson v. Amidon, 114 Minn. 202, 130 N. W. 1002, 34 L. R. A. (N. S.) 647, Ann. Cas. 1912B, 987; In re Haebler v.

N. Y. Produce Exchange, 149 N. Y. 427, 44 N. E. 87; Seligman v. Friedlander, 138 App. Div. 784, 123 N. Y. S. 583.

The same situation as we find here confronted the court in Boston Club v. Potter, 212 Mass. 23, 98 N. E. 614, 615 Ann. Cas. 1913C, 397, and there the court said:

"The plaintiff's right to recover depends upon whether the defendant was one of its members and was liable for dues on December 1, 1907. He had been such a member, but he claimed that he had resigned his membership on January 8, 1907, and that his resignation had taken effect on or before November 30 of that year.

"His letter of resignation, though seasonably delivered to some clerk or other officer or agent of the plaintiff, was not received by its secretary or passed upon by its executive committee. Therefore, it never took effect under article 7, sec. 6, of the by-laws. Resignation, with a cessation of further liability for membership dues, was a privilege of the member, and to avail himself of it he must comply with the terms of the by-law creating the privilege. * * *

"It was of no consequence that the defendant's resignation came to some agent of the plaintiff, such as a clerk at its office, if that resignation did not reach the necessary officer. * * *"

Plaintiff sued for $175, made up as follows:

Dues from January 1, to December 31, 1930 ................................................................$100
Dues from January 1 to June 30, 1931 ... 50
War tax on the above dues...................... 15
Locker rent for year 1930......................... 10

Total due club.................................................$175

The proof justified only a judgment for one year's dues, $100; one year's war tax, $10; and one year's locker fee, $10. The judgment below was for $120, and we believe that amount to be correct.

The judgment appealed from is affirmed.